UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANZZONI ALEJANDRO TOSCANO-PEREZ,

Petitioner,

v.

Case No.: 2:26-cv-13007
Hon. Gershwin A. Drain

KEVIN RAYCRAFT, *in his official capacity as Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *in his official capacity as Secretary, U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, *in his official capacity as Acting U.S. Attorney General*; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and JULIE MASSENGILL, *Jail Administrator, Monroe County Jail*,

Respondents.
______________________________/

**OPINION AND ORDER GRANTING THE PETITION FOR HABEAS CORPUS [ECF No. 1] AND ORDERING THAT PETITIONER BE IMMEDIATELY RELEASED OR, IN THE ALTERNATIVE, GIVEN A BOND HEARING WITHIN SEVEN (7) DAYS OF THE DATE OF THIS ORDER**

# I. INTRODUCTION

Presently before the Court is Petitioner Anzzoni Alejandro Toscano-Perez's Petition for Writ of Habeas Corpus. Petitioner claims that he has been in immigration detention without bond in the Monroe County Jail since July 8, 2026, and that his detention without bond violates the Immigration and Nationality Act ("INA"), the Fourth Amendment, and the Due Process Clause of the Fifth Amendment. Respondents oppose the petition.

The Court concludes that a hearing will not aid in the disposition of this petition and will determine the outcome on the briefs. E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Petition for Writ of Habeas Corpus [ECF No. 1] is GRANTED. It is ORDERED that Respondent Kevin Raycraft (Director of the Detroit Field Office of Immigration and Customs Enforcement) IMMEDIATELY RELEASE Petitioner or, in the alternative, provide Petitioner with a bond hearing before an Immigration Judge WITHIN 7 DAYS OF THE DATE OF THIS ORDER.

Furthermore, Respondents Markwayne Mullin (Secretary of the U.S. Department of Homeland Security), U.S. Department of Homeland Security, Todd Blanche (U.S. Attorney General), Executive Office for Immigration Review, and Julie Massengill (Administrator of the Monroe County Jail) are hereby DISMISSED from this case.

## II. BACKGROUND

Petitioner Anzzoni Alejandro Toscano-Perez is a citizen of Guatemala who entered the United States near Hidalgo, Texas in November 2016 where he attended a scheduled appointment with U.S. Customs and Border Protection ("CBP") officers at a port of entry. ECF No. 2, PageID.42; ECF No. 5-2, PageID.95. Petitioner was sixteen years old at the time[1] having traveled to the United States with his fourteen-year-old sister. ECF No. 5-2, PageID.95. At his appointment, Petitioner was designated an "arriving alien" and deemed inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for failure to procure valid immigration documents. *Id.* at 97. Petitioner and his sister stated at the time that they feared returning to Guatemala due to specific threats of gang violence. *Id.* Petitioner was detained from November 2016 to January 2017 and thereafter released by the Office of Refugee Resettlement ("ORR") Homestead into the custody of his grandmother who was residing in Miami, Florida. ECF No. 5, PageID.76; ECF No. 5-3, PageID.97.

Since being released to his grandmother's custody in 2017, Petitioner has established a fixed U.S. address where he lives with his wife, a U.S. citizen. ECF No. 1, PageID.8. Petitioner's wife submitted an I-130 petition in 2024 requesting Petitioner be classified as an immediate relative of a U.S. citizen. ECF No. 1-2, PageID.30. This I-130 petition was approved. ECF No. 5-5, PageID.103. Petitioner

[1] Today, Petitioner is 26 years old. ECF No. 1, PageID.8.

simultaneously submitted an I-485 petition requesting his status be adjusted to lawful permanent resident. ECF No. 1-3, PageID.32. This I-485 petition, however, was denied. ECF No. 5-5, PageID.103. Petitioner has no criminal history and appears to be employed. ECF No. 1, PageID.8; ECF No. 2, PageID.42, 45.

In July 2026—nearly a decade after his initial CBP appointment—Petitioner was arrested by Immigration and Customs Enforcement ("ICE") officers outside his workplace on the basis of Petitioner's immigration status. ECF No. 2, PageID.45; *see* ECF No. 5-5, PageID.103. Petitioner was once again designated an "arriving alien" and sent to Monroe County Jail for the duration of removal proceedings. ECF No. 5-5, PageID.104; ECF No. 5-6, PageID.105. Petitioner requested a custody redetermination hearing ("bond hearing") before an Immigration Judge which was categorically denied for lack of jurisdiction based on Petitioner's "arriving alien" designation. ECF No. 5-7, PageID.108. An "individual hearing" was presumably held thereafter on September 17, 2026, where Petitioner's fear of returning to Guatemala expressed during his 2016 CBP appointment *may* have been addressed nearly a decade later[2]. ECF No. 5, PageID.77-78, 110-111.

Petitioner is one of thousands of noncitizens whose detention without bond is a direct result of a 2025 DHS policy change. In July 2025, DHS issued an internal

[2] Due to the timing of the Petition, the Court is unable to ascertain what transpired during the "individual hearing" presumably conducted on September 17, 2026, following Petitioner's Reply in these proceedings.

memorandum entitled "Interim Guidance Regarding Detention Authority for Applications for Admission." *See Blanco Cabrera v. Raycraft*, No. 4:26-CV-00085-DAR, 2026 WL 904606, at *1 (N.D. Ohio Apr. 2, 2026). This new policy "subjects noncitizens who have resided in the United States for a long time and who are apprehended in the interior of the country to mandatory detention" under 8 U.S.C. § 1225(b), instead of discretionary detention under § 1226(a). *See Moreno-Espinoza v. Ladwig*, No. 2:25-cv-03093-TLP-tmp, 2025 WL 3691452, at *1 (W.D. Tenn. Dec. 19, 2025). It revises DHS's "decades-long interpretation" that most noncitizens already present in the United States were eligible for release on bond or conditional parole during removal proceedings under § 1226(a).[3] *See Kaur v. Raycraft*, No. 4:25-CV-02679, 2026 WL 709728, at *2 (N.D. Ohio Mar. 13, 2026).

The Board of Immigration Appeals ("BIA") has issued decisions in agreement with DHS's new interpretations of § 1226(a) and § 1225(b). *See Matter of Q. Li, 29 I. & N. Dec. 66* (BIA May 15, 2025); *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025). As such, "immigration judges are now bound by precedent which denies noncitizens bond hearings" under § 1225(b). *Moreno-Espinoza*, 2025 WL 3691452, at *2. Consequently, the federal courts have been

[3] The discretionary detention scheme in § 1226(a) is subject to an exception for noncitizens present in the country with certain criminal histories. *See* § 1226(c)(1). Under this exception, noncitizens with the requisite criminal histories are subject to mandatory detention without bond.

subject to "a deluge of habeas actions" from detainees in ICE custody who argue that their detention without bond is legally erroneous and unconstitutional. *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *1 (D. Idaho Apr. 7, 2026).

Here, Petitioner argues that his detention without an opportunity for bond violates the INA, violates his Fourth Amendment rights, and violates his Fifth Amendment due process rights. *See* ECF No. 1. Respondents disagree on both statutory and constitutional grounds. *See* ECF No. 5. Respondents also argue that the Court should dismiss all Respondents except Petitioner's immediate custodian. *Id.* at PageID.79-81.

## III. LEGAL STANDARD

Under 28 U.S.C. § 2241, a district court has the "authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004). "Section 2241 confers jurisdiction to hear habeas corpus challenges to the legality of a noncitizen's detention." *Lopez v. Olson*, 815 F. Supp. 3d 576, 580 (W.D. Ky. 2025).

"Although the Court 'may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine

if they comport with the demands of the Constitution.'" *Id.* (quoting *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020)).

## IV. DISCUSSION

### a. Statutory Framework & Interpretation of the INA

"Two statutes principally govern the detention of noncitizens pending removal proceedings: 8 U.S.C. §§ 1225 and 1226." *Gomes v. Hyde*, 804 F. Supp. 3d 265, 268–69 (D. Mass. 2025). To begin, § 1226(a) provides "a discretionary detention framework," *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025), for "aliens already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). That section permits the arrest and detention of a noncitizen pending a decision on whether the noncitizen is to be removed from the United States, but it provides that the noncitizen may be released on bond of at least $1,500 or on conditional parole during those proceedings. 8 U.S.C. § 1226(a)(2). This "is considered the 'usual removal process.'" *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 256 (D. Me. 2025) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). "The only exception to section 1226's discretionary detention

regime is that the Attorney General 'shall take into custody' any noncitizen involved in certain enumerated criminal activities." *Id.* (citing 8 U.S.C. § 1226(c)(1)).[4]

On the other hand, "[s]ection 1225(b) 'supplement[s] § 1226's detention scheme.'" *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022)). It applies to noncitizens "seeking admission into the country[.]" *Jennings*, 583 U.S. at 289. Under "§ 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(a)(1)). These noncitizens "fall into

---

[4] A noncitizen falls into this exception—and is subject to mandatory detention—if he:

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year,
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or
> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

8 U.S.C. § 1226(c)(1).

one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* "Section 1225(b)(1) concerns the inspection of noncitizens arriving in the United States and certain other noncitizens who have not been admitted or paroled." *Rodriguez*, 779 F. Supp. 3d at 1247 (cleaned up). Such noncitizens are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process[.]" *Id.* (quoting *Jennings*, 583 U.S. at 287). Section 1225(b)(2) involves the inspection of "other" noncitizens who are applicants for admission and "seeking admission." *See* 8 U.S.C. § 1225(b)(2). "Individuals detained under § 1225 are not entitled to a bond hearing," and other than limited exceptions not implicated here, "detention . . . is considered mandatory." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025).

*i. Interpretation of 8 U.S.C. § 1225(b) and Applicable Subsection*

As an initial matter, Respondents argue that the Petition is improper for discussing Petitioner's detention with respect to § 1225(b)(2) and that Petitioner, rather, is detained under § 1225(b)(1). ECF. No. 5, PageID.81-86. Respondents assert that Petitioner "knew before he filed this suit [that] he is detained under § 1225(b)(1) as an 'arriving alien'" and that the Court should therefore deny the Petition or require amendment to "accurately address" Petitioner's detention with respect to § 1225(b)(1). ECF No. 5, PageID.81-82. Petitioner argues that the Petition discusses § 1225(b) with sufficient generality such as to properly challenge his

detention under either §§ 1225(b)(1) or 1225(b)(2). *See* ECF No. 6. The Court agrees with Petitioner. *See Singh v. Warden*, No. CV 26-311-DLB, 2026 WL 2547206, at *2 (E.D. Ky. Aug. 28, 2026) ("[T]he Court does not accept Federal Respondents' contention that [Petitioner] was detained under the auspices of 8 U.S.C. § 1225(b)(1) on the basis of the Notice and Order of Expedited Removal.").

Respondents' argument appears to rest on Petitioner having been designated an "arriving alien" on several DHS forms, such as Notices to Appear issued in 2016 and 2026. ECF No. 5, PageID.81-82; ECF No. 5-3, PageID.97; ECF No. 5-6, PageID.105; ECF No. 5-7, PageID.108. The Court, however, can find no other language in those forms indicating which subsection of § 1225(b)—§ 1225(b)(1) or § 1225(b)(2)—applies to Petitioner's detention. *See* ECF No. 5-5, PageID.102-4; *see also* ECF No. 5-6, PageID.105-107; *see also* ECF No. 5-7, PageID.108-109; *see also* ECF No. 5-8, PageID.110-11. At most, the DHS forms issued to Petitioner in 2016 and 2026 charged him as "inadmissible" under § 1182(a)(7)(A)(i)(I) without referencing either subsections 1225(b)(1) or 1225(b)(2). ECF No. 5-3, PageID.97; ECF No. 5-6, PageID.105. Furthermore, both subsections 1225(b)(1) and 1225(b)(2) include the language "aliens arriving." 8 U.S.C. § 1225(b). Accordingly, the "arriving alien" designations on the DHS forms issued to Petitioner are not alone sufficient to convince this Court that Petitioner "knew . . . he is detained under § 1225(b)(1) as an 'arriving alien'" rather than under § 1225(b)(2). Accordingly, the

Court disagrees with Respondents that Petitioner's focus on subsection 1225(b)(2) instead of subsection 1225(b)(1) is fatal to his unamended Petition and construes the Petition as properly challenging Petitioner's detention under § 1225(b) generally.

Moving on, according to Respondents, Petitioner is properly detained without bond under § 1225(b)(1). *See* ECF No. 5. Respondents argue that Petitioner falls within the plain language of § 1225(b)(1) as an inadmissible arriving alien who has indicated a fear of persecution. ECF No. 5, PageID.85. Respondents further argue that this classification mandates Petitioner's detention under § 1225(b)(1)(B)(iii)(IV) pending removal. *Id.* Petitioner, in contrast, argues that he does not fall into § 1225(b)'s plain language and scope—including both subsections 1225(b)(1) and 1225(b)(2)—because, *inter alia*, he is not an arriving alien. Instead, he asserts that his detention should fall under § 1226(a), which provides a detainee with a chance for bond. The Court agrees with Petitioner.

"The Court begins its review on the merits by examining the plain text of the relevant statutory provisions." *Duran-Rojas v. Raycraft*, No. 25-cv-14051, 2026 WL 243205, at *6 (E.D. Mich. Jan. 29, 2026). When interpreting statutory text, courts should "assign each word of the statute its ordinary, contemporary, common meaning… while keeping in mind that statutory language has meaning only in context." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (cleaned up and citations omitted). Moreover, a statute "should be construed so that effect is given to

all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009).

§ 1225(b)(1)(A)(ii) states in relevant part:

> If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section . . . 1182(a)(7) of this title and the alien indicates . . . a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

8 U.S.C. § 1225(b)(1)(A)(ii). Subsection (B) then goes on to describe procedures for conducting interviews of an inadmissible alien who has indicated a fear of persecution and, depending on the outcome of a fear credibility determination, mandates detention "for further consideration of the application for asylum" under 8 U.S.C. § 1225(b)(1)(B)(ii) or "until removed" under 8 U.S.C. § 1225(b)(1)(B). As relevant here, regulation defines an "arriving alien" as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act [codified at 8 U.S.C. § 1182(d)(5)(A)], and even after any such parole is terminated or revoked.

8 C.F.R. 1001(q). Respondents argue that upon Petitioner's initial entry in 2016, he was properly designated an "arriving alien" who was "inadmissible under section . .

. 1182(a)(7)" (failure to procure valid immigration documents) and who had indicated "a fear of persecution." ECF No. 5, PageID.85; 8 U.S.C. § 1225(b)(1)(A)(ii). Respondents go on to argue that Petitioner's 2017 release by ORR Homestead constituted parole under § 1182(d)(5)(A) and, therefore, Petitioner's "arriving alien" designation endures so long as any applicable procedures of § 1225(b)(1)(B) remain unresolved by immigration officials. Respondents argue, therefore, that Petitioner "remains an arriving alien" to this day and thus remains subject to detention under § 1225(b)(1). ECF No. 5, PageID.84-86; *see* 8 C.F.R. 1001(q).

Petitioner, on the other hand, argues that he was no longer an "arriving alien" at the time of his 2026 arrest and that any applicability of § 1225(b)(1) to Petitioner resulting from his initial "arriving alien" designation concluded upon being released into the country by ORR Homestead in 2017. ECF No. 2, PageID.47. Petitioner, therefore, argues that his current detention is instead governed by § 1226(a) and *not* by § 1225(b)(1) or § 1225(b)(2). *Id.* The Court agrees with Petitioner that his current detention is governed by § 1226(a)—not by §§ 1225(b)(1) or 1225(b)(2)—because his "arriving alien" designation concluded prior to his 2026 arrest.

Core to Respondents' argument for lawful detention of Petitioner under § 1225(b)(1) is that the presumption of regularity mandates the conclusion that Petitioner was released by ORR Homestead in 2017 pursuant to § 1182(d)(5)(A)

because ORR Homestead's authority was so limited under 45 C.F.R. § 400.43(a)(1). ECF No. 5, PageID.86. Respondents' argument follows that, pursuant to 8 C.F.R. 1001(q), parole issued under 8 U.S.C. § 1182(d)(5)(A) by ORR Homestead in 2017 can have no effect on Petitioner's "arriving alien" designation and, therefore, Petitioner remains an "arriving alien" indefinitely subject to detention without bond under § 1225(b)(1). ECF No. 5, PageID.86.

"[A]dministrative agencies are entitled to a presumption that they 'act properly and according to law.'" *Parra-Morela v. Holder*, 504 F. App'x 461, 462 (6th Cir. 2012) (quoting *FCC v. Schreiber*, 381 U.S. 279 (1965)). "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Found., Inc.*, 272 U.S. 1 (1926).

Respondents argue that according to the presumption of regularity, the Court must accept without evidence that Petitioner was properly released on parole under § 1182(d)(5)(A) because that was "the only way that HHS's Office of Refugee Resettlement would have had authority to release petitioner to his family member's custody in this case" at the time of Petitioner's 2017 release by ORR Homestead. ECF No. 5, PageID.86. The Court disagrees in light of clear evidence to the contrary.

Respondents admit that "[p]arole under § 1182(d)(5)(A) is typically granted for a term of 3 months to 2 years." ECF No. 5, PageID.86. Here, Petitioner resided

in the country undisturbed by any alleged parole violation for nearly ten years before his sudden arrest in 2026, well beyond the typical parole term under § 1182(d)(5)(A). Furthermore, Petitioner asserts that he "attended all court hearings as required and met every other condition" of his release since his initial 2016-2017 detention. ECF No. 1, PageID.8. If Petitioner had been in violation of his parole under § 1182(d)(5)(A) following its expiration and thus subject to mandatory detention as Respondents suggest, the question of why Respondents waited until 2026 to detain him—when they apparently had prior opportunities to do so—remains unanswered.

Additionally, subsections 1225(b)(1) and 1225(b)(2) "mandate detention for a specified period of time: until immigration officers have finished 'consider[ing]' the asylum application, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Jennings*, 583 U.S. at 283. "Once those proceedings end, detention under § 1225(b) must end as well." *Id.* at 297. Accordingly, contrary to Respondents' assertion, another circumstance that may have granted ORR Homestead authority to release Petitioner in 2017—other than parole pursuant to § 1182(d)(5)(A)—includes that immigration officials had finished considering Petitioner's asylum application and whereby "detention under § 1225(b) must [have] end[ed] as well." *Id.*

Indeed, this is precisely Petitioner's argument: "[o]nce CBP officers inspected Petitioner at the [port of entry during his initial 2016-2017 detention], they released

him into the United States, the § 1225 inspection process was complete. What remained—removal proceedings on the charge of inadmissibility—is squarely governed by § 1226." ECF No. 2, PageID.47. Accordingly, the Court finds clear evidence contradicting the presumption of regularity asserted by Respondent and declines to conclude that Petitioner was released in 2017 pursuant to § 1182(b)(2)(A). Therefore, although it is unclear based on the record evidence when precisely Petitioner was relieved of his "arriving alien" designation, the Court concludes that Petitioner was no longer an "arriving alien" at the time of his 2026 arrest nearly a decade after arriving to the United States.

*ii. Interpretation of the Text in Context of the INA*

Looking beyond the plain text of § 1225(b), the context in which this provision appears demonstrates that Petitioner's reading of the statute—and not Respondents'—is the correct reading. *See Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

"The title of § 1225 is revealing: 'Inspection by immigrations officers; expedited removal of inadmissible arriving aliens; referral for hearing.'" *Velazquez v. Raycraft*, No. 25-cv-13675, 2026 WL 447417, at *4 (E.D. Mich. Feb. 17, 2026) (quoting 8 U.S.C. § 1225). The subheadings for § 1225(a) is "Inspection," for §

1225(b) is "Inspection of Applicants for Admission," and for § 1225(d) is "Authority relating to inspections." 8 U.S.C. § 1225. "'Inspection' denotes… 'a checking or testing of an individual against established standards'… and to 'inspect' means 'to view closely in critical appraisal: look over' or 'to examine officially.'" *Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *13 (D.N.M. Jan. 20, 2026) (quoting Merriam-Webster.com). The word "inspection" is "difficult to reconcile with mass or abstract enforcement" in the interior of the country, particularly when words like "arrest" and "apprehension" appear nowhere in the statutory provision. *Id.*

Furthermore, the section explicitly addresses arriving aliens, stowaways, and crewmen, "words that suggest arrival at a border or port of entry." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). It also prescribes detailed procedures for inspection and screening of aliens by immigration officers at the border. *See* § 1225(a), (b)(1), (d). The INA's implementing regulations "likewise tie such inspections to the border." *Espinal v. Ybarra*, No. 26-76 JB/GJF, 2026 WL 851254, at *12 (D.N.M. Mar. 27, 2026) (citing 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection…")). "By anchoring § 1225 in inspection concepts that Congress defines,

it signals that an inspection at the threshold of entry triggers the powers and procedures [in § 1225].” *Singh*, 2026 WL 146005, at *14.

“By contrast, § 1226 speaks in remarkably different terms.” *Id.* at *22. That section is titled “Apprehension and detention of aliens.” 8 U.S.C. § 1226. It “employs language associated with warrants… work authorization… and prior convictions[.]” *Singh*, 2026 WL 146005, at *22. (citing 8 U.S.C. § 1226(a), (a)(3), and (c)(1)(E)). The “post-entry language of § 1226 reflects Congress’ considered judgment that different procedures are appropriate for preventing entry than for removing individuals who have already entered and established presence.” *Id.* Indeed, this is “[t]he line historically drawn between [§ 1225 and § 1226].” *Martinez v. Hyde*, 792 F. Supp. 3d 211, 221 (D. Mass. 2025).

Petitioner argues that he is was no longer an “arriving alien” at the time of his 2026 arrest and that any applicability of § 1225(b) to Petitioner resulting from his initial “arriving alien” designation concluded upon being released into the country by ORR Homestead in 2017. *See* ECF No. 2. Petitioner, therefore, argues that his current detention is instead governed by § 1226(a). *Id.* Respondents disagree and argue instead that the plain text of § 1225(b)(1) supports Petitioner’s ongoing detention. *See* ECF No. 5.

Respondent’s interpretation ignores § 1225’s “inspection-centered posture,” which makes clear that Congress intended to tie “the concept of ‘applicant for

admission' to inspection rather than to a freestanding status untethered from the inspection context." *Singh*, 2026 WL 146005, at *20. An immigration officer inspecting a noncitizen "triggers both § 1225(b)'s removal pathways… and the pathways operate as alternative outcomes *of the inspection process*." *Id.* (emphasis added). Section 1225(b)(1) painstakingly divides applicants for admission into subgroups and specifies those who are subject to expedited removal and how these individuals may seek asylum. *Id.* at *18; *see* 8 U.S.C. § 1225(b)(1). Then, § 1225(b)(2) "comes over the horizon" and serves as a "catchall provision" for those individuals seeking entry at the border who are "not covered by § 1225(b)(1)." *Id.* (quoting *Jennings*, 583 U.S. at 287). Individuals who would fall into this catch-all provision include lawful permanent residents returning from abroad who potentially abandoned their lawful permanent resident status by staying abroad too long; individuals entering under the visa waiver program; and U.S. citizens who cannot present proper documentation. *See Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 WL 2753496, at *7 (D.N.J. Sept. 26, 2025). Thus, the most logical reading of § 1225(b) is that it governs different categories of noncitizens presenting themselves for *inspection* and prescribes different procedures for those noncitizens.

*iii. <u>Prior Agency Enforcement</u>*

The legislative history of § 1226(a) further supports Petitioner's reading. Before the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") passed, which enacted § 1226(a) and § 1225(b) as we know it today,

> the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability . . . any [noncitizen] . . . may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]' "). This predecessor statute, like Section 1226(a), included discretionary release on bond. *See* § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General . . . be continued in custody . . . [or] be released under bond[.]"). Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[] [noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same).

*Pizarro Reyes*, 2025 WL 2609425, at *7 (quoting *Rodriguez*, 779 F. Supp. 3d at 1260). Indeed, Respondents' prior practice of detaining noncitizens already present in the country under § 1226(a) had been "unbroken for almost thirty years, not to mention the much longer historically practice from which it stems[.]" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 514 (5th Cir. 2026) (Douglas, J., dissenting); *see, e.g., Dep't of Justice, Detention and Removal of Aliens*, 62 Fed. Reg. 10,312, 10,323 (Mar 6, 1997) ("Despite being applicants for admission, aliens who are present

without having been admitted or paroled… will be eligible for bond and bond redetermination.”). And for thirty years, Congress has failed to object or correct DHS’s failure to detain “the millions of people it purportedly required to be detained.” *Buenrostro-Mendez*, 166 F.4th at 515 (Douglas, J., dissenting); *see Zemel v. Rusk*, 381 U.S. 1, 11 (1965) (“Congress’ 25 failure to repeal or revise in the face of such administrative interpretation… constitute[s] persuasive evidence that that interpretation is the one [Congress] intended.”).

Given this history, the Supreme Court has treated Respondents’ assertion of “a previously unheralded power to detain non-citizens present in the United States under section 1225(b)(2)(A) with a measure of skepticism.” *West Virginia v. Env’t Prot. Agency*, 597 U.S. 697, 748 (2022) (Gorsuch, J., concurring). This Court does the same here with respect to Respondents’ assertion of lawful detention of Petitioner under § 1225(b)(1).

For all of the foregoing reasons, Petitioner is unlawfully detained without bond under § 1225(b). Under the INA, Petitioner is subject to discretionary detention under § 1226(a) and is entitled to a bond hearing.

**b. Due Process**

The Due Process Clause of the Fifth Amendment forbids the Government from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend V. “Freedom from imprisonment—from government custody,

detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "So, detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In determining whether there was a violation of the Due Process Clause, the court must analyze the three factors the Supreme Court set out in *Mathews v. Eldridge*: (1) the private interest affected, (2) the risk of erroneous deprivation of that private interest and the value of any additional safeguards, and (3) the government's interest, including the fiscal and administrative burden the additional safeguards would impose. 424 U.S. 319, 334–35 (1976)).

Petitioner argues that his due process rights have been violated by his detention without an opportunity for bond. ECF No. 2, PageID.54. Respondents argue, in contrast, that a noncitizen's due process rights are coextensive with the procedures of § 1225(b)(1) provided by Congress, and because Petitioner is held

under § 1225(b)(1), he has received all the process he is due. ECF No. 5, PageID.83–84.

But as the Court already explained, Petitioner's detention under § 1225(b)(1) is unlawful, and "therefore the process due to him is that which is afforded under Section § 1226(a)." *Lopez-Campos*, 797 F. Supp. 3d at 785. Given that the Court has found that Petitioner's detention should be under § 1226(a), *not* § 1225(b)(1), Respondents' argument as to the due process required by § 1225(b)(1) is futile. *Quintero v. Olson*, No. 4:26-cv-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026). The Court proceeds to examine the *Mathews v. Eldridge* factors.

The first *Mathews* factor weighs strongly in favor of Petitioner. "Petitioner has a significant private interest in avoiding detention, one of the 'most elemental of liberty interests.'" *Sanchez Alvarez v. Noem*, 807 F. Supp. 3d 777, 789 (W.D. Mich. 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

The second *Mathews* factor also supports Petitioner. Removal proceedings "are civil, not criminal, and we assume that they are nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. The Government "has generally identified two regulatory goals justifying civil immigration detention: 'ensuring the appearance of

aliens at future immigration proceedings' and 'preventing danger to the community.'" *Gomez v. Bondi*, No. SA-26-CA-00727-XR, 2026 WL 753307, at *10 (W.D. Tex. Mar. 13, 2026) (citing *Zadvydas*, 533 U.S. at 690). Civil detention is impermissibly "punitive if it becomes a mechanism for retribution or general deterrence." *Id*. (quoting *Kansas v. Crane*, 534 U.S. 407, 412 (2002)). Under the circumstances here, where Petitioner is unlawfully detained under § 1225(b)(1) and has not received the bond hearing he would normally be entitled to under § 1226(a), the risk of the erroneous deprivation of Petitioner's liberty (when he may not be a flight risk or danger to society) is intolerably high. And because Petitioner has no other redress to his detention, "*any* additional safeguard against unreasonable detention will be valuable." *Al-Thuraya v. Warden, Orange Cnty. Corr. Facility*, 809 F. Supp. 3d 135, 145 (S.D.N.Y. 2025) (emphasis in original).

The third *Mathews* factor also favors Petitioner. The Government's interest in detaining Petitioner without bond pending removal is low. While the Government undoubtedly has a weighty interest in ensuring the removal of noncitizens who are here unlawfully, this interest is "in fact protected by the individualized determination by an IJ as to whether an individual should be granted bond at all under existing, well-established procedures" to determine whether he is a risk of flight or danger to society. *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1182 (D. Nev. 2025).

Moreover, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Given that all *Mathews* factors favor Petitioner, Petitioner's due process rights under the Fifth Amendment are violated by his mandatory detention without bond under § 1225(b)(1). Accordingly, Petitioner is being held "in custody in violation of the Constitution . . . of the United States." *Rasul v. Bush*, 542 U.S. 466, 473 (2004). Because the Court finds that Petitioner's constitutional rights are violated by his present detention under the Due Process clause of the Fifth Amendment, the Court does not reach the merits of Petitioner's Fourth Amendment claim.

**c. Proper Respondents**

Additionally, Respondents argue that all Respondents should be dismissed except for Julie Massengill, the warden of the Monroe County Jail, who is Petitioner's immediate custodian. In the alternative, Respondents argue that only Kevin Raycraft, the ICE Field Office Director, is the proper respondent. ECF No. 5, PageID.80-81. Respondents cite *Rumsfeld v. Padilla*, which held that "there is generally only one proper respondent to a given prisoner's habeas petition," and that "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. 426, 435 (2004).

However, *Padilla* sidestepped any definitive ruling about how the immediate custodian rule operates in the immigration detention context. *See id.* at 435 n.8. Sixth Circuit case law, which was not affected by *Padilla*'s holding, *see Cid-Barrios v. Raycraft*, 814 F. Supp. 3d 839, 845 (E.D. Mich. 2025), states that the "INS[5] District Director for the district where [the petitioner] is being detained… [is] the proper respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). The Sixth Circuit explained that the District Director is the proper respondent because he is a noncitizen detainee's "immediate custodian." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003); *see also id.* at 320 ("[A]lthough the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners.").

In *Roman*, the Sixth Circuit seemingly rejected the idea that more than one respondent could be named in a noncitizen's habeas petition. *See id.* at 321 ("Section 2243 states that a writ of habeas corpus 'shall be directed to *the* person having

[5] INS, the Immigration and Naturalization Service, was replaced by the Department of Homeland Security in 2003, which itself is divided into three subgroups: USCIS, CBP, and ICE. *See* U.S. Citizenship and Immigration Services, *The Homeland Security Act*, https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/10-why-employers-must-verify-employment-authorization-and-identity-of-new-employees/11-the-homeland-security-act (last visited September 24, 2026). The "INS District Director," as stated in *Roman*, is the equivalent of an ICE District Director today.

custody of the person detained,' which suggests that only one individual can properly be named as the respondent to a habeas corpus petition."). However, the Sixth Circuit held that a higher supervisory official, like the Attorney General, could be the proper respondent to a habeas corpus petition under "extraordinary circumstances… necessary to preserve a person's access to habeas corpus relief," such as where immigration authorities exercised their power to transfer a detainee out of district "in a clear effort to evade an alien's habeas petitions." *Id.* at 325–26.

Here, no extraordinary circumstances exist. There is no indication that naming a more remote supervisory authority is necessary to preserve Petitioner's habeas rights. In line with *Roman*, Kevin Raycraft, the Director of the ICE Detroit Field Office, "is the proper respondent to be named" in this habeas petition. *Cid-Barrios*, 814 F. Supp. 3d at 845. All other Respondents are dismissed.

## V. CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED**. Respondent Kevin Raycraft (Detroit Field Office Director for ICE) is **HEREBY ORDERED** to immediately release Petitioner, or in the alternative, provide him with a bond hearing under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order.**

**IT IS FURTHER ORDERED** that Respondent shall file a Status Report with this Court **within ten (10) days of the date of this Order** to certify compliance with

this Order. The Status Report shall include if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for the denial.

**IT IS FURTHER ORDERED** that U.S. Department of Homeland Security, Executive Office for Immigration Review, Markwayne Mullin (Secretary of the U.S. Department of Homeland Security), Todd Blanche (U.S. Attorney General), and Julie Massengill (Administrator of the Monroe County Jail) are **DISMISSED** from this case.

Petitioner's attorney has requested Attorney's Fees under the Equal Access to Justice Act. Petitioner is **DIRECTED** to file a motion for Attorney's Fees within **four (4) weeks from the date of this Order** and the Court will resolve that request upon full briefing by the parties.

**IT IS SO ORDERED.**

Dated: September 28, 2026

/s/______________________
GERSHWIN A. DRAIN
United States District Judge